*New-Haven,*
July, 1843.

Chester
*v.*
Wheelwright.

CHESTER *against* WHEELWRIGHT and others.

Where *A* was indebted to *B* in the sum of 10,426 dollars, being the balance of the account current between them, and *A* gave *B* a mortgage to secure 3000 dollars; it was held, [or assumed,] that such mortgage was not invalid for uncertainty, as against other creditors of *A*.

Where payments are made on account, without any specific application, at the time, by either party, the law will apply them according to the justice of the case.

Therefore, where *A* gave a mortgage to *B*, to secure 3000 dollars, part of a debt of 10,000 dollars due from *A* to *B*; *A* then made sundry payments to *B*, which were credited in account generally, without any specific direction, by either party, as to their application; *C*, a creditor of *A*, then levied an execution on *A's* equity of redemption, which was appraised at one dollar, and set off to *C*, subject to *B's* mortgage of 3000 dollars; on a bill of foreclosure subsequently brought by *B*, *C* claimed that such payments should be applied on the mortgage debt, and not on the other part of *A's* debt to *B*; it was held, that *C's* claim was inadmissible, inasmuch as the effect of such an application would be to give the mortgaged premises to *C*, discharged, so far as the payment went, of *B's* lien, and still leave his execution against *A* in full force; which would be manifestly unjust and inequitable.

And where certain payments were made by *A* to *B*, after the levy of *C's* execution, on securities previously placed in *B's* hands, by *A*, for the security and eventual payment of *A's* general indebtedness to *B*; it was held, that the same application ought to be made of these payments, as of the former.

THIS was a bill in chancery for a foreclosure.

On the 8th of *June*, 1837, *John Wheelwright*, one of the defendants, executed and delivered to the plaintiff a mortgage deed of certain real estate in *New-Haven*, to secure the sum of 3000 dollars. On the 25th of *October*, 1839, *W. B. Bristol* and *A. G. Bristol*, executors of *William Bristol*, Esq. deceased, the other defendants, levied an execution in their favour against *Wheelwright* on the equity of redemption in the premises, which was duly set off to them, subject to said mortgage debt of 3000 dollars, at the appraised value of one dollar. When the mortgage was executed, *Wheelwright* was indebted to the copartnership of *W. W. Chester & Co.*, consisting of *W. W. Chester* and the plaintiff, in the sum of 10,426 dollars, 14 cents, for notes lent, cash advanced, and goods furnished; this indebtedness being the balance of the account current between them, as it then existed. Between that time and the 25th of *October*, 1839, the following payments were made, by *Wheelwright*, to *W. W. Chester & Co.*, *viz. June*, 26th, 1837, 99 dollars, 31 cents; *August* 14th,

1837, 286 dollars ; *September* 10th, 1838, 39 dollars, 29 cents;
*November* 30th, 1838, 349 dollars, 78 cents ; *March* 29th,
1839, 285 dollars, 63 cents ; *April* 16th, 1839, 294 dollars, 67
cents : making, in the whole, 1354 dollars, 68 cents. During
this period, new advances were made by *W. W. Chester &*
*Co.* to *Wheelwright,* leaving a balance in favour of that firm
against him, on the 25th of *October,* 1839, of 9178 dollars, 3
cents.

At the time the mortgage in question was given, *W. W.*
*Chester & Co.* held, as security for the debt due to them, a
note of *T. Butler,* for 99 dollars, 31 cents, payable on the
26th of *June,* 1837. On the 25th of *October,* 1839, they
held, as security for such debt, 1. a deed of 640 acres of land,
in *Illinois,* dated the 28th of *July,* 1839, and valued at 1252
dollars ; 2. a claim on *Folsom & McCullock* of *St. Domingo;*
3. a claim on the *Bowery Church* in *New-York* city ; 4. the
interest of *Wheelwright* in a wharf in *Alexandria, D. C.,*
being about one third thereof, which did not exceed 1088
dollars, 52 cents; and 5. the mortgage of the *New-Haven*
property now in question.

The note of *T. Butler* was paid to *W. W. Chester & Co.,*
and the amount passed to *Wheelright's* credit, in their account
with him. The claim on the *Bowery Church* was collected,
and the avails thereof, amounting to 804 dollars, credited to
*Wheelwright,* in the same manner. The claim on *Folsom &*
*McCullock* was invested in two shipments of coffee, which
were received and sold by *W. W. Chester & Co.,* on the 7th
of *July,* 1840, and 22nd of *November,* 1842, the first sale
netting 1482 dollars, 9 cents, the second netting 1022 dollars,
88 cents, making 2504 dollars, 47 cents, which was applied
by them to *Wheelwright's* credit, in their account with him.
The other securities are still held in their original state.

The mortgage deed in question was given in part security
of the above-mentioned debt, and was taken by *Stephen M.*
*Chester,* the plaintiff, in his individual name, for convenience
only, to facilitate a subsequent conveyance, should it become
desirable. Of said debt more than 3000 dollars still remains
due and unpaid. The value of the premises is about 800
dollars.

The case, embracing these facts, was reserved for the ad-
vice of this court as to what decree ought to be passed.

HARVARD LAW LIBRARY

New-Haven,
July, 1843.

Chester
v.
Wheelwright.

*C. A. Ingersoll*, for the plaintiff, after remarking, that when the several payments were made by *Wheelwright*, to *W. W. Chester & Co.*, for whose benefit the mortgage was given, there was no application of them, by *Wheelwright*, to any particular debt, or to any particular portion of the general indebtedness, it being left to the creditors to make the application,—contended, 1. That *W. W. Chester & Co.* had a right to apply the payments in such manner as they chose. Where there are several debts, and payments are made, and no application is made by the debtor, the creditor has the right to make the application; and when it is left to the creditor to apply the payments, it is presumed that he will apply them in such way as will be most beneficial to him. When a creditor has security for a part of the debt, the law will apply the payment to that part of the debt for which he has no security, or the least security, leaving that for which he has the best security, unpaid. *Peters* v. *Anderson*, 5 *Taun.* 596. *Field* & al. v. *Holland* & al. 6 *Cranch* 8. 28. *Brewer* v. *Knapp* & al. 1 *Pick.* 332. *Baker* v. *Stackpoole*, 9 *Cowen* 420. *Stone* v. *Seymour* & al. 15 *Wend.* 19. *Clark* v. *Burdett*, 2 *Hall* 197. *Kirby* & al. v. *Duke of Marlborough*, 2 *Mau. & Selw.* 18.

2. That the securities which *W. W. Chester & Co.* received from *Wheelwright* for his general indebtedness, after the mortgage in question was given, were not intended, either by the creditors or the debtor, to be applied to the mortgage debt. The part which had already been secured, required no additional security. The avails of the securities must go to the debt to which they were intended to be applied.

3. That the claim of the defendants, *W. B.* and *A. G. Bristol*, if successful, would work the most manifest injustice. They have taken the equity of redemption of property mortgaged for 3000 dollars, for one dollar; and they now claim to have the mortgaged property, without paying any thing more for it, while their judgment debt, (except one dollar,) is in full force. Where there is a payment, and no application is made by either party, the law will appropriate it according to *the justice of the case*. *Seymour* & al. v. *Van Slyck* & al. 8 *Wend.* 403.

4. That the circumstances of the transaction furnish a strong presumption that *Wheelwright* intended the avails of

these securities to be applied to the debt other than the one secured by the mortgage. When a debtor makes a payment, he intends that that payment shall be available to him. But the proceeds of these securities will not avail him, unless they are applied as the plaintiff claims they should be. If they are applied to the payment of the mortgage debt, *Wheelwright* derives no benefit from such application ; the equity of redemption, which alone could be aided by such application, being no longer his. Where there is no express application of a payment, the law will apply it, upon the presumed intention of the debtor, to that debt a relief from which would be *beneficial* to him. *Pattison* & al. v. *Hull* & al. 9 *Cowen* 747. 765. & seq.

5. That the defendants, *W. B.* and *A. G. Bristol*, are estopped from saying that the mortgage debt was not due, when they levied their execution. They took the property, subject to the debt of 3000 dollars. The right which they acquired is the same as though they had acquired a right to the equity of redemption, by deed from *Wheelwright ;* and a party who has executed a deed, is thereby estopped from disputing any fact which it recites ; and all persons claiming under or through a party estopped by a deed, are bound by the estoppel. *Stow* v. *Wise,* 7 *Conn. R.* 214. *Jackson* d. *Munroe* v. *Parkhurst* & al. 9 *Wend.* 209. *Sayles* v. *Smith,* 12 *Wend.* 57.

*Townsend,* for the defendants *W. B.* and *A. G. Bristol,* contended, 1. That the plaintiff's mortgage was invalid for uncertainty, as against the creditors of *Wheelwright.* The record of a mortgage must disclose, with as much certainty as the nature of the case will admit of, the real state of the incumbrance. And if the mortgage is to secure an ascertained debt, the amount of that debt must be stated. *Hart* v. *Chalker* & al. 14 *Conn. R.* 77. Here the debt specified in the mortgage is 3000 dollars, whereas the debt proved is 10,426 dollars, 14 cents. It is wholly inadmissible for a man to claim, that if he has a debt of 10,000 dollars, he can take a mortgage for 3000 dollars, and have such mortgage remain in force until the whole 10,000 dollars is paid. To allow this, is entirely to destroy the object and to defeat the operation of the rule on the subject.

HARVARD LAW LIBRARY

*New-Haven,*
*July, 1843.*

Chester
*v.*
Wheelwright.

2. That in this case, the mortgage debt has been satisfied; the plaintiff having been paid more than 3000 dollars, by *Wheelwright,* since he took his mortgage on the 8th of *June,* 1837. *Wheelwright* had an undoubted right to apply the payments, at the time. If neither party then made any application, the law will apply the payments, in accordance with the presumed intention of the debtor, to the debt, or that portion of the debt, *which lies heaviest on the debtor,* and which *it concerns him most to discharge.* Thus, a payment is applied to a debt for which the debtor has given *pawns* and *mortgages,* rather than to a debt due by simple bond or promise. 9 *Cowen* 775. *in notis.* The condition of the plaintiff's mortgage is, that if he shall be paid 3000 dollars, the mortgage shall be void. He has been paid, by the mortgagor, 4663 dollars, 65 cents. It is impossible, therefore, that he can now have any claim under the mortgage.

HINMAN, J. The first objection of the defendant's counsel to a decree in favour of the plaintiff in this case, amounts to this : that, as the spirit of our recording system requires that the record of a mortgage should disclose, with as much certainty as the nature of the case will admit of, the real state of the incumbrance, it is wholly inadmissible to allow this plaintiff to take a mortgage to secure 3000 dollars of his debt of 10,426 dollars, 14 cents, and hold it as a valid security on the property, till his whole debt is paid. This objection, however, seems not to have been much relied on. It certainly cannot be claimed, successfully, that the mortgage was void for uncertainty, in not defining, with sufficient particularity, *the debt,* or the portion of the debt, intended to be secured by it. The objector afterwards impliedly admits the original legality and validity of the security, and attempts to show, that it does not remain a lien upon the property, on the ground that the debt has been paid.

Assuming, then, that this mortgage was originally a valid security, in the hands of the plaintiff, for the payment of the 3000 dollars intended to be secured by it ; it is very obvious, that the only question there can be, in the case, is, whether the condition of the mortgage deed has been complied with ; in other words, has the plaintiff been paid his 3000 dollars ? And this depends upon, and resolves itself into, a question, as

to the application of the payments, which the case finds to have been made to the plaintiff, since the mortgage was given. If these payments are to be applied on the particular portion of the debt secured by this mortgage, then the debt is paid—the condition of the deed is performed—and instead of a decree in favour of the plaintiff, he ought himself to release his mortgage title to the owners of the equity of redemption.

*New-Haven,*
*July, 1843.*

Chester
*v.*
Wheelwright.

On the other hand, if the payments are all to be applied to that portion of the debt, not secured by this mortgage, then no part of the 3000 dollars, to secure which the mortgage was given, has been paid ; and the plaintiff is entitled to a decree for the whole of it.

And 1. in relation to the application of the payments made, previous to the levy of the execution on the equity of redemption. Whatever doubt there may have been, or may now be, as to the application of indefinite payments, where no application is made by either party, whether the supposed interests of the party paying, or the party receiving are to be preferred, it has, at no time, been doubted, that the application must be made according to the justice of the case. *Seymour* & al. v. *Van Slyck* & al. 8 *Wend.* 403. *The United States* v. *Kirkpatrick* & al. 9 *Wheat.* 720. If both omit to make the application, the law, says Judge *Story,* " will apply the payments according to its own notions of justice." Indeed, the proposition, that an unjust application of them cannot be tolerated or allowed, is obviously self-evident, as a maxim in morals, as well as of law.

But, by looking at the levy of the defendants' execution, and the appraisers' certificate appended thereto, it will be seen, that this equity of redemption was taken, appraised, and set off to the executors of Mr. *Bristol,* subject to this mortgage debt, as amounting to 3000 dollars. If, therefore, the application claimed by them, is made of these payments, then the executors obtain the property, discharged, so far as these payments go, of the plaintiff's lien, and still have their judgment against *Wheelwright* in full force.

Without, therefore, resorting to the doctrine claimed by the plaintiff's counsel, that they are estopped from disputing the validity of this mortgage, as a valid security, at the time of their levy, by the recital of it in the appraisal and setting off of the equity of redemption ; or even to the doctrine, that

HARVARD LAW LIBRARY

*New-Haven,*
*July, 1843.*

*Chester*
*v.*
*Wheelwright.*

courts will apply payments to the debt which has the most precarious or inferior security—a principle sanctioned by the highest authority, in many cases—(*Peters* v. *Anderson,* 5 *Taun.* 596.) it is sufficient in this case, to say, that, in our opinion, it would be most manifestly unjust and inequitable to make such an application of the payments made previous to the levy of the defendants' execution, as is contended for by them.

2. As to the payments made since the levy of the defendants' execution. In relation to these, also, it does not appear to us at all necessary to enter upon the discussion of any doubtful principle, in order to show what application the law might make of these payments, had there been nothing in the situation or conduct of the parties from which to infer their intention upon the subject.

The parties had the right, either at the time of providing the fund, or at the time when the money was realized from it, to apply the avails as they pleased ; and if they have made the application, our duty is at an end, when we have carried into effect the objects directed and intended by them.

But the case finds, that these payments have all been realized and made, from the avails of certain securities, placed by *Wheelwright* in the hands of *W. W. Chester & Co.*, for the security and eventual payment of his general indebtedness to them. These securities were a deed of 640 acres of land in *Illinois ;* a claim on *Folsom & McCullock* of *St. Domingo ;* a claim on the *Bowery Church, New-York ;* and part of a wharf in *Alexandria.* Now, suppose the five securities, including the mortgage in suit, had each been of equal value, and should produce, each, one fifth part of the whole debt ; would any body contend, that the realizing the avails of any one of these securities, affected any of the other securities ? If this could be so, then the payment of one fifth part of the whole debt would discharge the plaintiff's lien on all the securities intended for it. And the increased number of his securities, if any one should prove available, would be entirely useless to him. The statement of such a proposition would seem to be sufficient, to show that such could not have been the intention of the parties.

We are bound to give such a construction to their contract, when that is to be inferred from their conduct and situation,

as, under all the circumstances, is the most reasonable, natural and probable. And, in doing this, we can entertain no doubt that the parties contemplated, when each security was given, that it was to apply to a separate and distinct portion of the general debt; the *New-Haven* mortgage to one portion of it; the land in *Illinois* to another; and so of the other securities, as they were, from time to time, given.

We are of opinion, therefore, that the plaintiff is entitled to a decree in his favour, for the whole amount of his debt of 3000 dollars; and so advise the superior court.

In this opinion the other Judges concurred.

Decree for plaintiff.