## In re BUSHNELL.

### (District Court, D. Connecticut. July 9, 1914.)

#### No. 3002.

1. BANKRUPTCY (§ 346*)—PREFERRED CLAIMS—TAXES.

Where a preferred claim by a city and town against a bankrupt for unpaid taxes is supported by sworn valuations, neither unjust nor illegal, it must be allowed as preferred, as provided by Bankr. Act (Act July 1, 1898, c. 541, 30 Stat. 563 [U. S. Comp. St. 1901, p. 3447]) § 64a, without reference to the hardship thereby occasioned general creditors.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 535; Dec. Dig. § 346.*]

2. TAXATION (§ 335*)—ASSESSMENTS—TAXPAYER—ESTOPPEL.

Where there is no competent evidence on which to base a finding that the assessed valuation of a bankrupt's property was either unjust or illegal, the taxpayer is bound and estopped by his own statements in lists returned by him as to the nature, title, and value of his property.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 562; Dec. Dig. § 335.*]

In Bankruptcy. In the matter of bankruptcy proceedings of Henry E. Bushnell, bankrupt. Appeal by the City and Town of Meriden from a referee's order disallowing certain taxes and interest owed by the bankrupt and claimed to be due the city and town, under Bankruptcy Act, § 64a. Reversed.

Geo. A. Clark, of Meriden, Conn., for town of Meriden.
Alfred B. Aubrey, of Meriden, Conn., for city of Meriden.
Wm. C. Mueller, of Meriden, Conn., for trustee.

THOMAS, District Judge. The city of Meriden claims to be a preferred creditor of the bankrupt, Henry E. Bushnell, for city taxes,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

with interest due and unpaid amounting on June 11, 1913, to $688.80 for the years and in the amounts as follows:

| Year. | Assessment. | Tax. | Interest. | Total. |
|---|---|---|---|---|
| 1906 | $6700 | $73.70 | $31.09 | $104.79 |
| 1907 | 6700 | 80.40 | 28.34 | 108.74 |
| 1908 | 9975 | 79.80 | 22.54 | 102.34 |
| 1909 | 9975 | 84.79 | 18.02 | 102.81 |
| 1910 | 9900 | 84.15 | 11.99 | 96.14 |
| 1911 | 9900 | 84.15 | 5.68 | 89.83 |
| 1912 | 9900 | 84.15 | ——— | 84.15 |

The town of Meriden also claims to be a preferred creditor for taxes and interest amounting on said day to $737.20, for the years and in the amounts as follows:

| Year. | Assessment. | Tax. | Interest. | Total. |
|---|---|---|---|---|
| 1907 | $6700 | $88.10 | $33.11 | $121.21 |
| 1908 | 9975 | 100.75 | 30.81 | 131.56 |
| 1909 | 9975 | 100.75 | 23.76 | 123.51 |
| 1910 | 9900 | 101.00 | 15.75 | 116.75 |
| 1911 | 9900 | 110.90 | 10.57 | 121.47 |
| 1912 | 9900 | 121.79 | .91 | 122.70 |

Said taxes were assessed and levied by the city and town upon personal property of the bankrupt, consisting of goods and property used by him in the business of a retail grocery and liquor store, about which the dispute is in this case, and upon horses, wagons, and musical instruments owned by him, about which there is no dispute.

The amounts of said assessments for the several years as shown by the assessment lists, were as follows:

| Year. | Assessment on Am't Employed in Merchandise and Trade. | Assessment on Horses, Wagons, and Musical Instruments. |
|---|---|---|
| 1906 | $6000 | $700 |
| 1907 | 6000 | 700 |
| 1908 | 9000 | 975 |
| 1909 | 9000 | 975 |
| 1910 | 9000 | 900 |
| 1911 | 9000 | 900 |
| 1912 | 9000 | 900 |

The trustee claims that the assessments as to the amounts employed in merchandise and trading were invalid because the amounts thereof were excessive. As to the assessments on the horses, wagons, and musical instruments there is no dispute. The evidence offered by the trustee in support of the disputed amounts was the testimony of the bankrupt and of the trustee, together with the inventory, schedules, and tax returns which were introduced in evidence. It was not shown that the remedies prescribed by the statutes of Connecticut to obtain relief from excessive assessments had been pursued at any time by the bankrupt or by the trustee with respect of any of the assessment valuations in dispute. It was shown that in each of the years mentioned, (excepting 1912) the bankrupt returned his assessment lists to the board of assessors, subscribed and sworn to by him in person, as re-

quired by the statute laws of Connecticut, and that in all said lists so returned the amounts employed in merchandise and trade were set forth in the same amounts that the trustee now disputes. It was also shown that the original assessment lists, including the personal property of the bankrupt and the items and amounts employed in merchandise and trade, disputed by the trustee, were the same lists subscribed, verified and returned by the bankrupt. As to the assessed valuation of horses, wagons, and musical instruments mentioned in said tax assessment lists, no objection was made by the trustee, but the referee did not allow or include said items in the amount which he fixed as the total assessed valuation. From the testimony of the bankrupt, which was the only evidence offered, I find that all of the assessments (excepting 1912) were properly prepared, and were not excessive.

The referee concluded that the amount proper to be assessed as the "amount employed in merchandise and trade" was not above the amount set opposite the respective years, as follows:

| Year. | Assessment. |
| --- | --- |
| 1906 | $6000 |
| 1907 | 6000 |
| 1908 | 5500 |
| 1909 | 5500 |
| 1910 | 5000 |
| 1911 | 5000 |
| 1912 | 3000 |

—and passed an order that the taxes be computed upon each year's assessment, as above indicated, and allowed the city $500.35 and the town $487.35. This conclusion was partly reached upon the testimony of the trustee, whose knowledge of any of the matters in question did not begin until after the last assessment in question was made, and upon the testimony of the trustee as to the amount for which said goods were thereafter sold. This evidence was sufficient to justify the conclusion as to $3,000 being the amount proper to be allowed for 1912, but manifestly nothing upon which a conclusion could properly be based for the years 1906–1911, inclusive. Nor was any evidence offered, other than the testimony of the bankrupt, to show the value of the property in dispute during the years 1906 to 1911, inclusive, which was indefinite in character.

[1] The referee held that it was "very unjust to general creditors that the whole amount received from the sale of personal property should be taken for taxes on that property." While it may be unjust, yet it constitutes no legal reason for the disallowance of the amount due, unless it is shown by competent evidence that the valuations are unjust or illegally made. From the record I cannot find from competent evidence, that the referee's finding is correct, for it appears that the sworn valuations are neither unjust nor illegal. Such being the case, the taxes must be paid as a preferred claim, no matter what hardship is thereby worked upon the common creditors.

In New Jersey v. Anderson, 203 U. S. 483, 489, 27 Sup. Ct. 137, 139 (51 L. Ed. 284) the Supreme Court, speaking by Mr. Justice Day, said:

"The requirement of the present law (section 64a) is a wide departure from the act of 1867, and specifically obliges the trustee to pay all taxes legally due and owing, without distinction between the United States and the state, county, district, or municipality.

"An argument is made to the alleged injustice of this requirement, in that it may take away from the local creditors in the state where the property of the corporation is situated practically all the assets of the corporation in favor of the state where the corporation is organized, but has no business or property. And it is urged that to permit a state under such circumstances to have a preference in the payment of taxes would give to it an advantage which it could not otherwise obtain for want of charge or lien upon the property. But considerations of this character, however properly addressed to the legislative branch of the government, can have no place in influencing judicial determination. It is the province of the court to enforce, not to make the laws, and if the law works inequality the redress, if any, must be had from Congress."

See, also, In re Weissman (D. C.) 178 Fed. 115.

[2] If the bankrupt from 1906 to 1911, inclusive, had believed that the assessments were too high, the statute laws of the state afforded him ample remedy for a reduction of those assessments, and neither he nor his trustee can now complain that those assessments were excessive. If there is no competent evidence from which it may be found that the assessed valuation was unjust or illegal, a taxpayer is bound and estopped by his own statements, as to the nature, title, and value of his property. Waterbury v. O'Loughlin, 79 Conn. 630, 66 Atl. 173; Union School District of Guilford v. Bishop, 76 Conn. 695, 58 Atl. 13, 66 L. R. A. 989; 37 Cyc. 994; 5 Cyc. 341.

From the record therefore, I find that the amounts of the assessments should be as follows:

| Year. | Assessment on Amount Employed in Merchandise and Trading. | Assessment on Horses and Musical Instruments. |
|---|---|---|
| 1906 | $6000 | $700 |
| 1907 | 6000 | 700 |
| 1908 | 9000 | 975 |
| 1909 | 9975 | 975 |
| 1910 | 9900 | 900 |
| 1911 | 9900 | 900 |
| 1912 | 2100 | 900 |

—upon which the tax and interest upon the tax may be computed for both the city and town (excluding the year 1906 for the town), together with interest to June 11, 1913.[1]

Let a decree be entered accordingly.

---

[1] In view of the conditions existing in this court since that date, of which counsel on both sides are cognizant, it seems inequitable to allow interest beyond the date when the appeal was taken, and while the court may not have the power to order that no interest be allowed or collected, yet it trusts that this suggestion may be adopted as effectually as though such an order were passed.